*187 OPINION.
MoRRis:
The respondent “recognizes that the decedent, at the time the transfers were made, was in excellent physical condition, active, and robust, and that the transfers were not made causa mortis, that is, that the transfers were not motivated or prompted by any apprehension arising from a physical condition that led the decedent to believe death was imminent, impending, or near at hand”; and he does “not contend that the transfers are taxable by reason of such an apprehension, or because such transfers were made cama mortis.”
Whether a gift is made in contemplation of death or not depends upon the primary or dominating motive which prompted the making of the gift and this motive is to be ascertained from all of the surrounding circumstances when the gift was made. If death — be it impending or distant — prompted the gift, it falls within the ambit •of the statute. The respondent admits the good health of the decedent during all of the period when the transfers under consideration were made.
There is an abundance of testimony substantiating the fact that these various transfers — excepting the Atlantic City property purchased by the decedent in his wife’s name — were not only not made in contemplation of death but that other motives associated entirely with life were the generating source. They were prompted by the state.of affairs which grew out of the decedent’s early remarriage. Two trusts were established to provide an income for the decedent’s wife, one at the time of separation, and because of separation, and the other in order to effect reconciliation. Those were the irrevocable trusts of January 24, 1923, and April 12, 1923, from which she received the income and finally the corpus.
The February 3, 1923, transfer of the High Street property added little to what had been accomplished by the transfer of that property on October 3, 1922, except that, out of precaution, the decedent’s wife had been joined in the conveyance in order that there be no question about the property being free from dower claims. This transfer, at the outset, was to carry out the expressed wish of the decendent’s first wife by a devise found to be erroneously conceived when her will was admitted to probate. The other transfers were a part of the plan devised by the decedent’s children in combination with his personal attorney to protect the decedent’s estate from dissipation and to provide him with a life income. There is not a scintilla of evidence in the record — except what amounts to pure inference drawn from the advanced age of the decedent in 1923 when *188 these various transfers took place — from which any logical conclusion could be drawn that the decedent contemplated or even gave thought to the question of death.
We believe, from all of the testimony and documentary evidence, that there is no justification whatsoever for the determination that he made these various transfers in contemplation of death within the meaning of that term as defined in United States v. Wells, 283 U. S. 102.
The purchase of the Atlantic City property by the decedent in his wife’s name occurred after he was stricken with paralysis. Practically all we know is that the property was purchased and that it was placed in the name of Mrs. Hollander. The record is silent of any motive for the gift. In this particular the respondent’s determination must be approved, for lack of evidence.
It is the contention of the respondent that certain of these transfers are nevertheless taxable to the estate of the decedent under section 302 of the Revenue Act of 1926, as amended by section 803 of the Act of 1932, as transfers intended to take effect in possession or enjoyment at or after death. We are of the opinion that, except as to the trust involving the Málveme Street property, they can not be so classified. In order for the estate tax to apply to these transactions, they must have been testamentary in effect, and in order for them to have been testamentary in effect, the thing to which the tax applies must have passed at the death of the decedent from his “possession, enjoyment, or control.” Helvering v. St. Louis Union Trust Co., 296 U. S. 39. Where the decedent has unqualifiedly vested a property right in another, in a transaction begun and completed during his lifetime, the tax does not attach, notwithstanding, the decedent reserved to himself a life interest. May v. Heiner, 281 U. S. 238. Nothing whatsoever passed to the living upon the death of this decedent which was not passed in 1923. This case is a much stronger one for the petitioner’s cause than where it is provided that upon failure of the property to vest in possession due to death of the grantee, it shall revert to the grantor, but the Supreme Court, in Helvering v. St. Louis Union Trust Co., supra, and Becker v. St. Louis Union Trust Co., 296 U. S. 48, has held that even under those circumstances and notwithstanding there is a possibility of a reversion to the grantor, nevertheless, such a grant is not one to take effect in possession or enjoyment at or after death. In respect to this contention, except as to the trust involving the Málveme Street property, the respondent is in error.
With respect to the Málveme Street property trust, the settlor reserved the right during his lifetime to manage and control the corpus without interference by the trustee and the power to lease the prop *189 erty the same as if no trust had been executed, at the same time reserving to himself all the income therefrom. By the retention of such powders, the “possession, enjoyment, or control” of the corpus passed at his death, and the transfer was testamentary in effect. The value of the corpus of this trust, which the respondent placed at $82,200, should be included, therefore, in the decedent’s gross estate.
Section 803 (a) of the Revenue Act of 1932 is not retroactive and has no bearing on the question here. Elizabeth B. Wallace, Executrix, 27 B. T. A. 902; affd., 71 Fed. (2d) 1002; certiorari denied, 293 U. S. 600.
Reviewed by the Board.

Judgment will be entered under Bule 50.