## SCHULTZ v. UNITED STATES.
### No. 12709.

Circuit Court of Appeals, Eighth Circuit.

Feb. 24, 1944.

W. Donald Dubail and Charles R. Judge, both of St. Louis, Mo., for appellant.

L. W. Post, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and J. Louis Monarch, Sp. Assts. to the Atty. Gen., Harry C. Blanton, U. S. Atty., of Sikeston, Mo., and Russell Vandivort, Asst. U. S. Atty., of St. Louis, Mo., on the brief), for appellee.

Before SANBORN, WOODROUGH, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

The question for decision is whether the proceeds of certain policies of insurance upon the life of Herman E. Schultz, Jr., were properly included in his gross estate for the assessment of estate taxes under the Revenue Act of 1926, as amended, 26 U.S.C.A. Int.Rev.Acts, pages 227-231.

The controlling statutory provisions are as follows:

"Sec. 302 [as amended by Section 404 of the Revenue Act of 1934, c. 277, 48 Stat. 680]. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever. situated, except real property situated outside the United States

\* \* \* \* \* \*

"(c) [as originally enacted]. To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. \* \* \*"

"(c) [as amended by Joint Resolution of March 3, 1931, c. 454, 46 Stat. 1516, and by Section 803(a) of the Revenue Act of 1932, c. 209, 47 Stat. 169]. To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth.

\* \* \* \* \* \*

"(g) To the extent of the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life; and to the extent of the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life."

The facts are stipulated. Five ten-year endowment policies of insurance on the life of decedent are involved in the present suit. Except for the amounts payable, the policies are identical. Three were delivered in 1920 and matured in 1930. Two were delivered in 1925 and matured in 1935. Herman E. Schultz, Jr., died September 19, 1935, after the maturity of all of the policies. The premiums of all policies were paid by him. The aggregate cash value of all policies at maturity was $61,475.80

In each policy the insurance company agreed, in consideration of an annual premium, to pay to Herman E. Schultz, Jr., on the date of maturity the face amount of the policy and, in the event of his prior death, to pay that amount to his wife, Helen L. Schultz, beneficiary. On April 10, 1925, by appropriate endorsement made a part of each of the policies, the following provision for the disposition. of the proceeds of them upon maturity as death claims or as endowments was made. If the policies matured as death claims, the sums payable under them were to be retained by the insurance company, and interest thereon at the rate of $2.47 per thousand dollars was to be paid to the decedent's wife for life. Upon her death, the amount retained by the insurance company was to be dis.ributed to decedent's daughter, Helen

A. Schultz, in monthly installments in accordance with a table set out in the policies, these installments to continue for the daughter's life, and, in any event, for not less than 120 months. If the policies matured as endowments, the amounts payable under them were to be retained by the company, and interest thereon at the rate of $2.47 per thousand dollars was to be paid to Herman E. Schultz, Jr., for life, as beneficiary, and then to his wife as contingent beneficiary for her life if she survived the insured. The principal of the policies after the death of Herman E. and Helen L. Schultz was to be distributed to the daughter in specified monthly payments as set out above. If Helen L. Schultz, the contingent beneficiary, survived her daughter, Helen A. Schultz, she was given the right to have the principal of the policies distributed to her in monthly installments as provided for the benefit of the daughter in the event that she survived her mother. In this settlement provision the decedent expressly waived all his rights of surrender, withdrawal, or commutation.

By the express terms of the policies, the amount retained by the insurance company upon their maturity as endowments was payable to the executors, administrators, or assigns of Herman E. Schultz, Jr., if he survived his wife and daughter. The insured waived the right to change beneficiaries.

Following the death of Herman E. Schultz, Jr., on September 19, 1935, Helen L. Schultz, as executrix of his estate, filed an estate tax return, and paid the estate tax computed upon it. She did not include the proceeds of the insurance policies in the decedent's gross estate. Thereafter, the administration of the estate was completed, the estate distributed, and the executrix discharged. On distribution, Helen L. Schultz, succeeded to all rights of the estate. The Commissioner determined that the proceeds of the policies should have been included in decedent's gross estate, and made a deficiency assessment against the estate in the sum of $12,642.08, which Helen L. Schultz paid. Her claim for refund being denied, she brought this suit in the District Court to recover the sum of $9,318.48, together with interest. From a judgment denying the relief sought, she brings this appeal.

Appellant's contention in the District Court was, and is here, that the question of the inclusion of the proceeds of the insurance policies in the gross estate of decedent is controlled by section 302(g) of the Act. The Government contends that section 302(c) is controlling under the facts; and, in the alternative, that, if section 302(g) is the applicable section of the statute, the proceeds of the policies were nevertheless properly included in decedent's gross estate. The District Court concluded that, the five endowment policies having matured and having become operative as endowments during the life of Herman E. Schultz, Jr., the relevant statutory provision was section 302(c) and not section 302(g); that the settlement endorsements executed by Herman E. Schultz, Jr., with respect to the five policies constituted transfers intended to take effect in possession or enjoyment at or after his death, within the meaning of section 302(c), as amended, in view of the fact that the amounts retained by the insurance company were payable to his executors, administrators, and assigns, if he survived his wife and daughter, and also because the insured reserved to himself for life the right to receive the interest payments upon the amounts retained by the insurance company. Appellant assigns error in these conclusions of the District Court.

We think it unnecessary to decide which of the sections of the Act, 302(c) or 302(g), is controlling on the facts of this case. For, in either event, the proceeds of the insurance policies were properly included within decedent's gross estate under Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368.

If, as the District Court decided, the beneficiaries named in the policies did not receive the interest given them in the principal of the policies as insurance payable upon decedent's death within the meaning of section 302(g), but as the proceeds of endowment funds realized upon the maturity of the policies and held by the insurance company, at decedent's direction, to pay the income thereon to the decedent for his life and thereafter to the appellant for her life, with remainder to his daughter, it is clear that Helvering v. Hallock, supra, controls on the facts here, because of the provision in the contract between decedent and the insurance company that the endowment funds, if decedent survived his wife and daughter, should be payable to his executors, administrators, or assigns. This possibility of reverter retained by decedent

brings the situation here squarely within the rule of Helvering v. Hallock, supra, in which the Court overruled the St. Louis Trust cases (Helvering v. St. Louis Union Trust Co., 296 U.S. 39, 56 S.Ct. 74, 80 L.Ed. 29, 100 A.L.R. 1239; and Becker v. St. Louis Union Trust Co., 296 U.S. 48, 56 S.Ct. 78, 80 L.Ed. 35), and held applicable the rule announced in Klein v. United States, 283 U.S. 231, 51 S.Ct. 398, 75 L.Ed. 996. Here, as in the Hallock and Klein cases, the interests granted decedent's wife and daughter by the settlement provision incorporated in the policies were contingent upon their survival of decedent. Only decedent's death gave those interests "definitive measure." The death of the decedent was the "indispensable and intended event" which brought the interest of the wife and daughter into being and "effected its transmission from the dead to the living." Klein v. United States, supra, 283 U.S. at page 234, 51 S.Ct. at page 399, 75 L.Ed. 996.

To escape the effect of the Hallock case, appellant presses two arguments upon us. In one the appellant contends that May v. Heiner, 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826, 67 A.L.R. 1244, and later cases following it (Morsman v. Burnet, 283 U.S. 783, 51 S.Ct. 343, 75 L.Ed. 1412; Burnet v. Northern Trust Co., 283 U.S. 782, 51 S.Ct. 342, 75 L.Ed. 1412) are controlling here and are not overruled by the Hallock case; and, in the other, that the facts here are distinguishable from those in the Hallock case.

Whether the Hallock case overruled May v. Heiner and companion cases is a question which has given rise to much diversity of opinion. In his dissenting opinion, 309 U.S. at page 123, 60 S.Ct. at page 453, 84 L.Ed. 604, 125 A.L.R. 1368, Mr. Justice Roberts contends that this was the necessary result of the Hallock case, a position with which apparently the majority of the Court did not agree. The Board of Tax Appeals answered the question in the affirmative in Estate of Mary H. Hughes v. Commissioner, 44 B.T.A. 1196, but later receded from this conclusion in Estate of Edward E. Bradley v. Commissioner, 1 T.C. 518. It has been said that "Undoubtedly the Hallock case and May v. Heiner are basically incompatible, but basic contradictions do not necessarily mean that one decision must yield before the other." 1 Paul Federal Estate and Gift Taxation, page 341, note 22. And see Judge Frank's dissenting opinion in Helvering v. Proctor et al., 2 Cir., 140 F.2d 87. On the other hand, the lower courts recognize a distinction between the cases, and deny that May v. Heiner is no longer law. Estate of Edward E. Bradley v. Commissioner, supra; Helvering v. Proctor et al., supra; Bankers Trust Co. v. Higgins, 2 Cir., 136 F.2d 477; United States v. Brown, 9 Cir., 134 F.2d 372; New York Trust Co. v. United States, Ct.Cl., 51 F.Supp. 733; Commissioner v. Kellogg, 3 Cir., 119 F.2d 54.

These decisions which presently constitute the weight of authority clearly show the distinction between the facts encountered in May v. Heiner and companion cases and in Helvering v. Hallock. In the first group of cases the Court had before it irrevocable transfers in trust, by the terms of which the settlor reserved the income of the trust estate to himself for life, and provided, upon settlor's death, for the distribution of the trust estate to named beneficiaries. In none of these cases was there a provision for the reversion of the trust estate to the settlor or to his estate in case the settlor survived the beneficiaries, as was the situation in Helvering v. Hallock. The Court held the transfers complete as of the execution of the trusts on the ground that there was no shifting of economic interests in the trust property taking effect at or after the death of the settlor. The interests of the beneficiaries were complete upon the execution of the trusts. The settlor's death determined only the time of enjoyment of those interests by the beneficiaries. It could not diminish nor increase the interest transferred. On the other hand, in Helvering v. Hallock, the presence of the possibility of a reverter of the trust estate to the settlor was seized upon as the determining factor. Because of this possibility of reverter, the corpus of the trust passed to the beneficiaries only at or after settlor's death. Helvering v. Proctor et al., supra.

Appellant attempts to distinguish Helvering v. Hallock from the present case on the ground that the trust instrument in Helvering v. Hallock provided for the reversion of the trust estate to the settlor on the death of the beneficiary during his lifetime, while in the present case the reversion was to the executors, administrators, or assigns of the grantor if he survived the beneficiaries. We are unable to see any substantial distinction between a provision in a trust instrument for rever-

sion to a grantor and a reversion to his executors, administrators, or assigns. Assuming, however, that such a distinction exists, it can make no difference in the result here, because the decision in Helvering v. Hallock was not founded upon the fact that upon the death of the beneficiaries the trust estate should revert to the grantor, but upon the fact that, because of the possibility of reverter reserved in the trust instrument, the string on the trust estate could be cut only by the settlor's death within the life of the beneficiary. That result is true regardless of whether the trust estate reverts to the grantor or to another. In either case the death of the grantor is the "indispensable event" on which depends the transfer of the trust estate to the beneficiary.

Since section 302(c) of the Act is applicable here because of the provision of the policy that on the death of the beneficiaries during the lifetime of decedent the proceeds of the policies should go to his executors, administrators, or assigns, it is unnecessary for us to consider the further conclusion of the court that the same result follows because of the reservation by the decedent of the income from the endowment fund for his life. See Hassett v. Welch, 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858.

As pointed out above, the decision below may be sustained even if section 302(g) of the Act is controlling on the facts here. Although the fact is not stipulated, we assume as true for present purposes the statement in appellee's brief, not denied by appellant, that the beneficiaries had received from other insurance the exemption of $40,000 provided by this section. Prior to the decision of Helvering v. Hallock, it was held in Bingham v. United States, 296 U.S. 211, 56 S.Ct. 180, 80 L.Ed. 160, and in other cases relied upon by the appellant that amounts received by beneficiaries as insurance under policies taken out on the life of a decedent were not includible in decedent's gross estate, where the insurance policies were made payable to the beneficiary, and no right reserved in the insured to change the beneficiary, or to pledge or to assign the policies, though, by the terms of the policies, if the beneficiaries had not survived the decedent, the proceeds would have gone to his estate. The decisions of this court on the point under discussion followed Bingham v. United States, supra. Walker v. United States, 8 Cir., 83 F.2d

103, 110; Helvering v. Parker, 8 Cir., 84 F.2d 838, 840. The facts in Helvering v. Mercantile-Commercial Bank & Trust Co., 8 Cir., 111 F.2d 224, were said by this court to be distinguishable from the facts in the Hallock case. The Bingham case can not be distinguished on the facts from the present case, and, since the decision of Helvering v. Hallock, the courts have taken the position that the Bingham case is no longer law. Chase Nat. Bank of City of New York v. United States, 2 Cir., 116 F.2d 625, 626; Bailey v. United States, Ct.Cl., 31 F.Supp. 778, 90 Ct.Cl. 644; Commissioner v. Washer, 6 Cir., 127 F.2d 446, certiorari denied 317 U.S. 653, 63 S.Ct. 49; Bodell v. Commissioner, 1 Cir., 138 F.2d 553; Estate of John E. Cain Sr. v. Commissioner, 43 B.T.A. 1133. And see Broderick v. Keefe, 1 Cir., 112 F.2d 293, 296; 1 Paul Federal Estate and Gift Taxation, § 10.20; Treasury Regulations 80 (1937 Edition), Article 27, as amended by T.D. 5032. In the Bingham case the Supreme Court relied only upon the St. Louis Trust cases for the decision of the question now under discussion. Both of these cases were expressly overruled in Helvering v. Hallock. The reasoning of the Second Circuit in Chase Nat. Bank v. United States seems conclusive. Speaking of the Bingham and Hallock cases the Court said, after pointing out that the later case was based on the St. Louis Trust cases [116 F.2d 626]:

" * * * In each case there was a reversionary interest reserved to the settlor in case the beneficiary died before him. But the decisions in Helvering v. St. Louis Union Trust Co and Becker v. St. Louis Union Trust Co. were overruled in Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, 125 A.L.R. 1368, and Bingham v. United States must fall with them. In Helvering v. Hallock the court was not dealing with an insurance policy but with trusts in which the settlor retained a reversionary interest which terminated with his death like that in the St. Louis Trust decisions. But we can see no essential difference and accordingly regard the proceeds of the policies involved in the case at bar as coming to the beneficiary through the death of the insured. Such a succession falls directly within the terms of Section 302(g). The theory of taxation closely resembles that applied to joint tenancies. There, upon the death of one of the joint tenants, the entire res must be included in his gross estate so far as it

was derived from his property. Tyler v. United States, 281 U.S 497, 50 S.Ct. 356, 74 L.Ed. 991, 69 A.L.R. 758."

The facts in this case bring it within the rule announced in Helvering v. Hallock under either section 302(c) or section 302(g) of the controlling Revenue Act.

Judgment affirmed.